# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 46436

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: June 8, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| MATTHEW JAMES McCOY, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Judgment of conviction and unified sentence of thirty years with ten years determinate for conspiracy to commit robbery; concurrent sentences of ten years determinate for burglary and for battery with intent to commit robbery; and consecutive, unified sentence of ten years with four years determinate for battery with intent to commit robbery, <u>affirmed</u>; order denying Idaho Criminal Rule 35 motion for reduction of sentences, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Erik R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jeffery D. Nye, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

A jury found Matthew James McCoy guilty of conspiracy to commit robbery, Idaho Code §§ 18-6501, 18-1701; of burglary, I.C. § 18-1401; and of two counts of battery with the intent to commit robbery, I.C. § 18-911. Thereafter, the district court sentenced McCoy for all his crimes to a minimum of fourteen years and a maximum potential of forty years of imprisonment. McCoy filed a motion under Idaho Criminal Rule 35 for leniency, which the district court denied. McCoy appeals, arguing the district court erred by admitting hearsay evidence, by failing to instruct the jury on self-defense and the defense of others, by overruling his objection to the prosecutor's misstatement of the burden of proof, by denying McCoy's

1

motion for a mistrial, by imposing excessive sentences, and by denying his Rule 35 motion. We affirm McCoy's judgment of conviction, his sentences, and the denial of his Rule 35 motion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 2017, McCoy and his co-defendant, Jared Allen, were drinking and playing pool at a bar in Post Falls. Allen's girlfriend, Nichole, was with them. After leaving the bar, Nichole drove McCoy and Allen to a trailer house where McCoy formerly resided. McCoy and Allen entered the trailer, and Nichole remained outside. After McCoy and Allen entered the trailer, an altercation ensued involving McCoy and Allen and the trailer's two occupants, Tyler Matthews and his ten-year-old daughter, D.M. Two neighbors heard the altercation and D.M. screaming for help, went to the trailer, and witnessed the end of the altercation. As a result of the altercation, a grand jury indicted McCoy and Allen for conspiracy to commit robbery, for burglary, and for two counts of battery with the intent to commit robbery.

The case proceeded to a jury trial, and the State tried McCoy and Allen jointly. At trial, the witnesses gave differing accounts about McCoy and Allen's purpose in going to the trailer, how the altercation began, and what occurred during the altercation. As relevant to McCoy's appeal, the State offered testimony from D.M., Matthews, Matthews' two neighbors, and Deputy Brakeman. D.M. testified that on the night of the altercation, she and her dad were on the bed watching television in her bedroom when she heard someone open the front door and enter the trailer. She identified the defendants; stated they came into her bedroom and began kicking, punching, and throwing her dad against the wall; and repeatedly yelled "I'm gonna kill you. Where's the money?" When asked to describe what McCoy did to her, D.M. testified "He pulled my hair out. He threw me against the wall. He put me against the lamp." Further, she testified someone grabbed her throat, causing "choke marks." After D.M. broke free, she unsuccessfully attempted to break out a window in the back of the trailer to escape but eventually escaped out the front door. During D.M.'s testimony, the State admitted photographs showing her visible injuries.

Similarly, Matthews testified that he was in D.M.'s bedroom watching television, heard the front door open, stood up, and encountered Allen in the doorway. Further, he testified that Allen at that point demanded "Give me your money" and hit Matthews in the face. While Allen was on the ground on top of Matthews, Matthews saw D.M. try "to jump on" either Allen or

2

McCoy and he saw McCoy "choking" D.M. Matthews testified that Allen and McCoy both were yelling "Give me your money or I'll kill you"; McCoy hit him "ten or twenty" times; and Allen put him in a headlock while McCoy punched him. The altercation ended when, according to Matthews' neighbors, McCoy left the trailer; they found Allen in the living room with Matthews in a chokehold; and the neighbors broke up the fight. During Matthews' testimony, the State admitted photographs showing Matthews' injuries.

On direct examination, Deputy Brakeman testified he responded to the incident at the trailer and took Allen into custody. Over McCoy's objection, Deputy Brakeman testified that while transporting Allen to jail, Allen told Deputy Brakeman that McCoy had said "they were going [to Matthews' trailer] for money." Similarly, on rebuttal, Deputy Brakeman testified-- without objection--that he interviewed McCoy at the jail and that McCoy had said he went to the trailer to get money.

McCoy testified in his own defense. According to his testimony, he went to the trailer to pick up personal items; when he knocked on the front door, it swung open; he entered the trailer, and Allen followed behind him; Matthews came out of the bedroom and struck Allen; and Matthews and Allen began to "struggle and wrestle." During this time, McCoy was attempting to calm Matthews' dog, which was barking. After calming the dog, McCoy claimed that he saw Matthews in D.M.'s bedroom on top of Allen repeatedly punching him in the head; McCoy pulled Matthews off of Allen; when McCoy attempted to leave the bedroom, Matthews blocked him and punched him in the nose causing it to bleed; and McCoy threw a punch at Matthews, tackled him and began wrestling on the ground, during which time Matthews pulled off McCoy's shoes. While McCoy was "on all fours" looking for his shoes, he claimed that he was "accosted from behind" and that, before he realized it was D.M., he "blindly reached back and grabbed [D.M.] hooking her apparently by the neck, and she was flung to the ground." Eventually, Allen got Matthews "in a headlock or something, some sort of a hold," at which point McCoy left the trailer and drove off in Nichole's car.

The jury found McCoy guilty of all counts. After the district court sentenced McCoy, he filed a Rule 35 motion requesting leniency, which the court denied. McCoy timely appeals his conviction, his sentences, and the denial of his Rule 35 motion.

# II.

## ANALYSIS

### A.    Admission of Hearsay Evidence

McCoy asserts the district court erred by admitting hearsay when Deputy Brakeman testified about the statement Allen made while being transported to the police station. Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or at a hearing, offered in evidence to prove the truth of the matter asserted. Idaho Rule of Evidence 801(c); *State v. Gomez*, 126 Idaho 700, 704, 889 P.2d 729, 733 (Ct. App. 1994). Hearsay is inadmissible unless an exception in the Idaho Rules of Evidence or other rule of the Idaho Supreme provides otherwise. I.R.E. 802. The trial court has broad discretion to determine the admissibility of testimonial evidence. *State v. Smith*, 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990). A decision to admit or deny such evidence will not be disturbed on appeal absent a clear showing of an abuse of that discretion. *Id.*

During the prosecution's direct examination, Deputy Brakeman testified, over McCoy's objection, that "[Allen] indicated that while in route in [Nichole's] vehicle from the [bar] to where the crime happened that [McCoy] told him that they were going there for money." The district court allowed this testimony under Idaho Rule of Evidence 801(d)(2)(E), which provides that a statement offered against an opposing party is not hearsay if it was "made by the party's coconspirator during and in furtherance of the conspiracy." McCoy argues Allen's statement to Deputy Brakeman was not "made in furtherance" of the co-conspiracy. The State concedes the statement was not admissible against McCoy under Rule 801(d)(2)(E) but argues the error was harmless. We agree with the State.

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). We examine whether the alleged error about which McCoy complains was harmless. *State v. Lopez*, 141 Idaho 575, 578, 114 P.3d 133, 136 (Ct. App. 2005). A defendant appealing from an objected-to, nonconstitutionally-based error shall have the duty to establish such an error occurred, at which point the burden shifts to the State to demonstrate the error is harmless beyond a reasonable doubt. *State v. Montgomery*, 163 Idaho 40, 46, 408 P.3d 38, 44 (2017). The error is harmless if the Court finds the result would be the same without the error. *Id.* In deciding whether an alleged error is harmless, this Court looks to the entire record and the evidence produced at trial to determine whether we can find the jury actually rested its

verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the assumed inadmissible evidence. *State v. Joslin*, 166 Idaho 191, 194, 457 P.3d 172, 175 (Ct. App. 2019).

Generally, when hearsay testimony is admitted in error but is repetitive of other testimony at trial, the error is harmless. This Court reached that conclusion in *State v. Woodbury*, 127 Idaho 757, 761, 905 P.2d 1066, 1070 (Ct. App. 1995). In that case, the State charged Woodbury with robbery and burglary. *Id.* at 758, 905 P.2d at 1067. During trial, the victim described the incident and his assailant. *Id.* Then, the responding officer also testified, over Woodbury's hearsay objection, regarding the victim's account of the assailant's attack on the victim. *Id.* Specifically, the officer testified "to the description of the assailant which [the victim] gave on the night of the incident" and "indicated [the victim] provided greater detail regarding the assailant's description on the night of the incident than [the victim provided] in his trial testimony." *Id.* On appeal, Woodbury challenged the admission of the officer's hearsay testimony. Although this Court concluded the district court erred by admitting the testimony, it further concluded the error was harmless because the officer's testimony was "notably repetitive" of the victim's testimony, and thus the information was already before the jury. *Id.* at 761, 905 P.2d at 1070. As a result, the Court ruled the jury would have reached the same decision absent the officer's testimony. *Id.*

As in *Woodbury*, Officer Brakeman's testimony that Allen said McCoy told him they were going to the trailer for money was repetitive of other evidence presented to the jury. After McCoy rested his defense, the prosecution called Officer Brakeman again as a rebuttal witness. During his rebuttal testimony, Officer Brakeman testified without objection that he had interviewed McCoy at the jail and that he had told Officer Brakeman "he went [to Matthews' trailer] to get money." McCoy did not object to this rebuttal testimony, which is repetitive of the testimony he challenges on appeal.

Having reviewed the entire record and the evidence produced at trial, we conclude the jury rested its verdict on evidence establishing McCoy and Allen went to the trailer to get money beyond a reasonable doubt and independent of Officer Brakeman's hearsay testimony that Allen said McCoy told Allen they were going to the trailer for money. This testimony was repetitive of other unchallenged testimony, including Officer Brakeman's statement that McCoy admitted going to the trailer for money and both Matthews' and D.M.'s testimony that McCoy and Allen

5

demanded money while at the trailer. Accordingly, the error in admitting Officer Brakeman's testimony about Allen's hearsay statement was harmless.

**B.      Self-Defense Instruction**

McCoy argues the district court erred by refusing to give McCoy's requested instructions on self-defense and the defense of others. Whether a jury has been properly instructed is a question of law over which we exercise free review. *State v. Severson*, 147 Idaho 694, 710, 215 P.3d 414, 430 (2009). Idaho Code § 19-2132(a) requires the trial court must provide to the jury "all matters of law necessary for their information" and must give a requested jury instruction if it is "correct and pertinent." Under a four-part test, a requested instruction must be given where: (1) it properly states the governing law; (2) a reasonable view of the evidence would support the defendant's legal theory; (3) it is not addressed adequately by other jury instructions; and (4) it does not constitute an impermissible comment on the evidence. *State v. Fetterly,* 126 Idaho 475, 476-77, 886 P.2d 780, 781-82 (Ct. App. 1994).

To meet the second prong of this test, a defendant must present facts to support each element of a prima facie case for the defense. *State v. Camp,* 134 Idaho 662, 665-66, 8 P.3d 657, 660-61 (Ct. App. 2000). If the defendant fails to provide evidence supporting any one of the necessary elements of a defense, the defendant has failed to meet his burden and is not entitled to have the jury instructed on that defense. *State v. Garner*, 159 Idaho 896, 898, 367 P.3d 720, 722 (Ct. App. 2016). The question of whether a reasonable view of the evidence supports an instruction to the jury is a matter left within the discretion of the trial court. *State v. Elison*, 135 Idaho 546, 552, 21 P.3d 483, 489 (2001).

Idaho's model jury instruction ICJI 1517 sets forth the elements of the prima facie case necessary to establish self-defense or the defense of another including that: (1) the defendant must have believed he or another person was in imminent danger of bodily harm; (2) the defendant must have believed his action was necessary to save himself or another person from the imminent danger; (3) a reasonable person, under similar circumstances, would have believed the defendant or another person was in imminent danger of bodily injury and believed the defendant's action was necessary; and (4) the defendant must have acted only in response to the danger and not for some other motivation.

McCoy argues a reasonable view of the evidence supports his claim that, to the extent he committed a battery, he acted to defend himself and Allen. We disagree. Notably, McCoy never

6

testified he believed he was in imminent danger of bodily harm.[1]  Although Matthews apparently punched McCoy, McCoy did not testify that he feared for himself or that he had to punch Matthews and tackle him to the ground to avoid imminent danger of injury.  Further, once McCoy pulled Matthews off of Allen (assuming McCoy's testimony on this point is true), then Allen needed no additional defense from McCoy; instead, Allen proceeded to put Matthews in a chokehold until Matthews' neighbors arrived.  No reasonable view of this evidence supports McCoy's claim he was acting in self-defense or the defense of Allen.  Accordingly, we hold the district court did not abuse its discretion by declining to instruct the jury on self-defense or the defense of another.

Moreover, any failure to instruct the jury on self-defense or the defense of another was harmless.  This affirmative defense would only have been applicable to McCoy's battery charges.  As noted above, one of the prima facie elements of the defense includes the defendant "must have acted only in response to [the] danger *and not for some other motivation.*"  ICJI 1517 (emphasis added).  By finding McCoy committed battery with the intent to commit robbery, the jury necessarily found McCoy's motive was robbery, and thus his motive was not self-defense or the defense of Allen.  As a result, any failure to instruct the jury on self-defense or the defense of another is harmless.

## C.  Prosecutorial Misconduct

McCoy argues the prosecutor committed misconduct by stating during the rebuttal closing argument:  "Do not check your common sense at the door.  To find that they're not guilty you have to say that the State's version is essentially not reasonable. . . . [o]r based on common sense.  That's what your instruction says . . . ."  McCoy objected to the prosecution's characterization of the burden of proof, but the district court overruled his objection.  On appeal, McCoy argues the prosecutor's misstatement "significantly lowered the State's burden of proof."

The State concedes the prosecutor misstated the reasonable doubt standard but argues the error was harmless.  McCoy asserts, however, that the district court committed structural error by overruling McCoy's objection, and thus the harmless error doctrine is inapplicable.  This Court

---

[1]    On appeal, McCoy fails to identify against whom he was defending himself and Allen: Matthews, D.M., or both.  McCoy's presentence investigation report reflects he is six feet and seven inches tall.  Because there is no evidence D.M. had a weapon of any kind and because she was only ten years old, we presume McCoy's argument is he was defending himself and Allen against Matthews.

7

has previously concluded in *State v. Herrera*, 152 Idaho 24, 266 P.3d 499 (Ct. App. 2011), that the harmless error doctrine applies to the prosecutor's misstatement of the burden of proof. In that case, the prosecutor misstated the State's burden of proof in closing argument. *Id*. at 31, 266 P.3d at 506. Herrera objected, and in response the district court stated the prosecutor's statement was "in the nature of argument." *Id*. On appeal, this Court concluded the district court "should have sustained the objection and cured the misstatement by admonishing the jury that the burden of proving the case beyond a reasonable doubt lies with the State." *Id*. Nevertheless, the Court held the error did not contribute to the verdict and was harmless. *Id*. at 32, 266 P.3d at 507. In support of this conclusion, the Court noted counsel's subsequent argument and the court's jury instructions properly stated the burden of proof. *Id*. Additionally, the Court expressly rejected Herrera's argument that the prosecution's misstatement of the burden of proof constituted structural error requiring automatic reversal. *Id*.

McCoy attempts to distinguish this case from *Herrera* by arguing "the district court did not respond to the objection by calling the prosecutor's representation 'argument'" as the court in *Herrera* did. We disagree that the court's response to McCoy's objection rises to the level of a structural error and apply the harmless error doctrine. The State asserts the prosecutor's misconduct is harmless because the district court properly instructed the jury on the reasonable doubt standard. We agree.

Regarding the burden of proof, the district court instructed the jury:

> Your duties are to determine the facts, to apply the law set forth in my instructions to those facts, and in this way decide the case. In so doing, you must follow my instructions regardless of your own opinion of what the law is or should be, or what either side may state the law to be.

Further, the court instructed:

> First, the State has the burden of proving each defendant's guilt. The State has that burden throughout the trial. Neither defendant is ever required to prove his innocence, nor does either defendant ever have to produce any evidence at all.
> Second, the State must prove the alleged crime beyond a reasonable doubt. A reasonable doubt is not a mere possible or imaginary doubt. It is a doubt based on reason and common sense. It may arise from a careful and impartial consideration of all the evidence or from a lack of evidence. If after considering all the evidence you have a reasonable doubt about either one or both of the defendants' guilt, you must find the defendant or defendants for whom you have a reasonable doubt not guilty.

McCoy does not dispute that the district court properly instructed the jury, and we presume the jury followed the court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997) (presuming jury followed court's instructions); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996) (same). Accordingly, we hold the court's error in overruling McCoy's objection to the prosecutor's misstatement of the burden of proof was harmless beyond a reasonable doubt.

## D.     Motion for Mistrial

McCoy also argues the district court erred by denying his motion for a mistrial based on the prosecutor's misstatement of the burden of proof during closing argument. Idaho Criminal Rule 29.1 governs motions for mistrial. "A mistrial may be declared on motion of the defendant when there occurs during the trial, either inside or outside the courtroom, an error or legal defect in the proceedings, or conduct that is prejudicial to the defendant and deprives the defendant of a fair trial." I.C.R. 29.1(a). Our standard for reviewing the court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983). Because we conclude that the prosecutor's misstatement was harmless, the error does not amount to reversible error. Accordingly, we hold that the court did not err by denying McCoy's motion for mistrial.

## E.     Cumulative Errors Doctrine

Relying on the cumulative errors doctrine, McCoy argues this Court should reverse his judgment of conviction. "Under the cumulative errors doctrine, an accumulation of irregularities, each of which might be harmless in itself, may in the aggregate reveal the absence of a fair trial in contravention of the defendant's right to due process." *Severson*, 147 Idaho at 723, 215 P.3d at 443. The presence of errors, however, does not by itself require the reversal of

a conviction because due process entitles a defendant to a fair trial, not an error-free trial. *State v. Jeske*, 164 Idaho 862, 874, 436 P.3d 683, 695 (2019).

In this case, the district court erred by overruling McCoy's objections to Deputy Brakeman's hearsay testimony and to the prosecutor's misstatement of the burden of proof during closing argument. Viewing these two errors in relation to the totality of evidence presented at trial, however, we do not find that the cumulative effect of these two errors denied McCoy a fair trial. Accordingly, we hold the cumulative errors doctrine does not require the reversal of McCoy's conviction.

## F. Sentencing

The district court imposed a sentence of thirty years with ten years determinate for conspiracy to commit robbery; ten years determinate for burglary; ten years determinate for the first battery charge; and ten years with four years determinate for the second battery charge, which related to McCoy's battery of D.M. McCoy challenges these sentences as excessive.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent an abuse of discretion if it is unreasonable on the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

McCoy argues the district court did not properly balance the mitigating and aggravating factors in this case. In support of his argument that the court abused its discretion, McCoy identifies several mitigating factors he contends warrant a lesser sentence including his age, his

minimal criminal history, his character, his motivation to overcome alcoholism, his remorse, and his ability to be a productive member of society. Having reviewed the record in this case, we cannot say the court abused its discretion. The district court properly considered the correct legal standards including protection of society, deterrence, rehabilitation, and retribution. The court found the sentences were necessary to protect the public, noting that McCoy had fourteen misdemeanors, had previously failed supervised probation twice, and had never addressed his alcoholism despite repeated opportunities to do so. Further, the court found the sentence for battering D.M. was necessary and appropriate to punish McCoy because "she'll never be the same" and "will have challenges her entire life."

The district court recognized the mitigating factors McCoy identifies on appeal, including that it found the positive testimony about McCoy's character to be credible. The court concluded, however, that this factor did not outweigh the need to protect society. While the mitigating factors McCoy identified may have some relevancy to sentencing, the court was not required to assess or to balance all of the sentencing goals in an equal manner. *See State v. Felder*, 150 Idaho 269, 276, 245 P.3d 1021, 1028 (2010) (noting equal balancing of goals not required). That the court did not elevate the mitigating factors over the need to protect society does not establish an abuse of discretion. *See id.* (noting elevation of societal protection over mitigating factors not an abuse of discretion). Accordingly, we hold the court did not abuse its discretion in sentencing McCoy.

## G. Rule 35 Motion

McCoy asserts the district court abused its discretion when it denied his Rule 35 motion. A motion for reduction of sentence under Rule 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). In conducting our review of the grant or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987).

McCoy asserts his sentence is excessive in light of new information, including his realizations that his anger toward Matthews related to being evicted from the trailer and was the catalyst of his actions against Matthews. He also emphasizes his efforts and obstacles in attempting to manage his alcohol problems and his realization that he needs treatment. Neither of these points, however, is new information; the district court essentially considered both factors at sentencing. McCoy's "insight" into the reason for his conduct is the equivalent of remorse, which the court did not find to be authentic. Further, the court considered McCoy's alcoholism and his failure to take advantage of treatment opportunities. Accordingly, McCoy did not submit any new information in support of his Rule 35 motion. Based on a review of the entire record, we cannot conclude the court abused its discretion by denying McCoy's Rule 35 motion.

### III.

### CONCLUSION

Although we conclude the district court erred by overruling McCoy's objection to Deputy Brakeman's hearsay testimony and to the prosecutor's misstatement of the burden of proof, we hold these errors are harmless and did not cumulatively deprive McCoy of a fair trial. We hold the court did not err by denying McCoy's request to instruct the jury on self-defense or the defense of another or by denying McCoy's motion for a new trial. Finally, we hold the court did not abuse its discretion when sentencing McCoy or denying his Rule 35 motion. Accordingly, we affirm McCoy's judgment of conviction, his sentences, and the district court's denial of his Rule 35 motion.

Chief Judge HUSKEY and Judge GRATTON **CONCUR**.